FILED
Apr 29, 2026
08:53 AM(ET)
TENNESSEE COURT OF
WORKERS' COMPENSATION
CLAIMS



**TENNESSEE BUREAU OF WORKERS' COMPENSATION
IN THE COURT OF WORKERS' COMPENSATION CLAIMS
AT KNOXVILLE**

| | |
|---|---|
| **WALTER HUBERT MYERS,**<br>            **Employee**,<br>**v.**<br>**ALCOA, INC. and ARCONIC<br>CORP.,**<br>            **Employer,**<br>**and**<br>**INDEMNITY INS. CO. OF<br>NORTH AMERICA,**<br>            **Carrier.** | **Docket No. 2025-30-4778**<br><br><br><br>**State File No. 860186-2024**<br><br><br><br>**Judge Pamela B. Johnson** |

---

## EXPEDITED HEARING ORDER

---

Walter Myers alleged occupational exposures and sought medical benefits including monitoring under the Workers' Compensation Law. Alcoa/Arconic denied his requests, asserting defenses of late notice, statute of limitations, and causation. For the reasons below, the Court holds Mr. Myers is not likely to prevail at a compensation hearing and denies his request for benefits at this time.

### Claim History

Mr. Myers worked for Alcoa/Arconic as a utility service worker and equipment operator from May 1979 until June 6, 2007. In the smelting process for manufacturing aluminum, he was exposed to various toxins, including dust, bauxite, carbon, fluoride, asbestos, and coal tar pitch. He was not provided protective clothing or respirators.

In 2007, while at work, Mr. Myers suffered a heart attack. Alcoa has provided medical benefits since 2007. He never returned to work afterward and was never evaluated for permanent impairment. Mr. Myers's heart attack workers' compensation claim with a separate constitutional challenge are pending in other courts.

1

*Medical Treatment*

Mr. Myers's medical history reflected treatment for various conditions as well as tobacco use for more than 45 years.

A July 2004 sleep study revealed multiple complaints, including difficulties with breathing, swallowing, and memory. At the conclusion of the sleep study, Mr. Myers was diagnosed with obstructive sleep apnea.

In November 2007, Mr. Myers saw neurologist Dr. Bruce LeForce for dizziness after his heart attack. Mr. Myers additionally reported some forgetfulness. Dr. LeForce diagnosed a June 6, 2007 myocardial infarction followed by dizziness. He also noted that Mr. Myers suffered a stroke at some point.

In May 2015, Mr. Myers saw his primary-care physician, Dr. Britton Bishop, who noted Mr. Myers had "quite a bit of wheezing" as well as morning cough and had been a heavy smoker since childhood. Dr. Britton diagnosed chronic obstructive pulmonary disease, obstructive sleep apnea, and coronary artery disease. He recommended a complete pulmonary function test and smoking cessation.

Mr. Myers saw his cardiologist Dr. Paul Holcomb in January 2020, reporting that he continued to smoke and experienced shortness of breath with exertion. He stated that the shortness of breath could be related to his smoking or heart. Dr. Holcomb discussed the long-term pulmonary and vascular effects of continued tobacco use and recommended tobacco cessation and lung cancer screening due to his lengthy history of smoking.

Dr. Britton saw Mr. Myers again in August 2020 and September 2022. Dr. Briton maintained his diagnoses of chronic obstructive pulmonary disease, obstructive sleep apnea, and coronary artery disease.

In the spring of 2023, Mr. Myers was involved in a motor vehicle accident and hired counsel. His attorney referred him to Dr. C.M. Salekin for evaluation of his injuries from the motor vehicle accident.

Mr. Myers returned to Dr. Salekin on April 25, 2024, and reported that he had shortness of breath for 18 to 20 years; trouble swallowing for six to seven months; and difficulties with memory, attention and concentration for ten to 12 years. Dr. Salekin determined that Mr. Myers "most likely [had] restrictive lung disease from long standing exposure to aluminum dust, carbon dust, and asbestos." He also

diagnosed impaired cognitive function, "most likely from aluminum dust exposure over a long period of time." Dr. Salekin further determined that "[c]oal tar/creosote exposure [was] likely contributing to [Mr. Myers's] difficulty in swallowing."

After his evaluation, Dr. Salekin completed a Form C-32 Standard Medical Report. He described Mr. Myers's injury as "injury to cerebral cortex due to aluminum dust" and the mechanism of injury as "inhalation of aluminum dust at work while working at Alcoa[.]" Dr. Salekin concluded that Mr. Myers's employment activity, more likely than not, was primarily responsible for the injury or need for treatment. Dr. Hina Kouser, a primary-care physician, responded to a questionnaire from Mr. Myers and agreed with Dr. Salekin's findings.

In July 2024, Dr. Britton answered a causation letter at Alcoa's/Arconic's request. Dr. Britton agreed that Mr. Myers's pulmonary and cognitive injuries developed before April 25, 2023. He related Mr. Myers's pulmonary symptoms, more likely than not, to his history of heavy smoking. Dr. Britton related Mr. Myers's cognitive problems, more likely than not, to the heart attack and/or stroke. In his deposition, he stated that he did not recall Mr. Myers having cognitive problems when he saw him from 2007 through 2024.

*Procedural History*

On May 23, 2024, Mr. Myers filed a petition for benefit determination seeking benefits for injuries to his "whole body, restrictive lung disease, and impaired cognitive function." He listed an injury date of April 25, 2024, and that he gave notice on May 1, 2024. Mr. Myers voluntarily dismissed his case on July 15, 2025.

Alcoa/Arconic filed two reverse petitions for benefit determination on July 24, 2025, seeking a dismissal with prejudice. It listed injury dates of June 6, 2027, and April 25, 2024. It wrote that Mr. Myers gave notice on May 1, 2024.

Mr. Myers filed a counter-petition alleging potential occupational exposures and seeking panels of gastroenterologists, pulmonologists, urologists, neurologists, and cardiologists for monitoring due to toxic exposures at work.

Alcoa/Arconic argued that Mr. Myers's claims are barred by the statute of limitations and notice provisions. It also asserted that the Court lacks jurisdiction based on the date last worked.

*Hearing Testimony*

Mr. Myers testified that he worked at Alcoa for 27 years. He said he was exposed to various toxins, chemicals, and dust at work as an equipment operator and utility worker. He described the work environment as hot and dusty. He denied wearing protective clothing or respirators. He said he has had memory problems, difficulty swallowing, and lung problems for several years, but no one ever explored the cause of his symptoms or the relationship to his work at Alcoa.

Adrianne Stoltenberg, an industrial hygienist at Arconic, testified that Alcoa generally conducted a pre-employment physical of an employee to establish the employee's health status at the time of hire. During employment, an employee's exposure levels would be monitored if exposure levels reached a certain threshold.

However, Ms. Stoltenberg was unable to find any records related to Mr. Myers's employment and potential exposure levels. Ms. Stoltenberg acknowledged that aluminum dust, aluminum oxide, bauxite, silica, coal tar pitch, creosote, and potentially manganese and carbon dust were present at Alcoa. She further agreed that it was reasonable for an employee exposed to various toxins to undergo yearly evaluations by the employee's primary-care physician.

**Findings of Fact and Conclusions of Law**

At the Expedited Hearing stage, Mr. Myers must prove he is likely to prevail at a compensation hearing that he is entitled to the requested benefits. Tenn. Code Ann. § 50-6-239(c)(6) (2025); *McCord v. Advantage Human Resourcing*, 2015 TN Wrk. Comp. App. Bd. LEXIS 6, at *7-8, 9 (Mar. 27, 2015).

*Notice*

In occupational disease cases, the employee must give notice within 30 days of "first distinct manifestation" of disease as required in Tennessee Code Annotated section 50-6-305. *Id.* § 50-6-305(a); *Pool v. Jarmon D&Q Transp.*, 2016 TN Wrk. Comp. App. Bd. LEXIS 1, at *9 (Feb. 18, 2016).

Notice of an occupational illness is tolled if an employee is reasonably unaware that the condition is work-related. *Wilson v. O.G. Kelley & Co.*, 2019 TN Wrk. Comp. App. Bd. LEXIS 13, at *9 (Mar. 15, 2019). "Usually, the first manifestation is considered to occur when there is a diagnosis from a physician and the employee knows or should know that his problems are work-related." *Id.* at *10.

4

Mr. Myers filed his petition for injuries to his "whole body, restrictive lung disease, and impaired cognitive function" on May 23, 2024. He listed an injury date of April 25, 2024, and that he gave notice on May 1, 2024.

In the reverse petitions filed by Alcoa/Arconic, it listed injury dates of June 6, 2027, and April 25, 2024, and that Mr. Myers gave notice on May 1, 2024.

Applying *Wilson*, Mr. Myers did not learn that his alleged occupational illnesses of restrictive lung disease and cognitive impairment were related to his employment until April 25, 2024. Mr. Myers gave Alcoa/Arconic notice of his occupational illnesses within 30 days of their "first distinct manifestation."

Thus, the Court finds that Mr. Myers is likely to prevail at a compensation hearing that he gave timely notice of his occupational illnesses.

*Statute of Limitations*

Tennessee Code Annotated section 50-6-306(a) provides that the statute of limitations for an occupational disease claim begins to run as of the date of the beginning of the incapacity for work. Moreover, "the partial or total incapacity for work . . . resulting from an occupational disease . . . shall be treated as the happening of an injury by accident[.]" *Morgan v. Lockheed Martin Corp.*, 2019 TN Wrk. Comp. App. Bd. LEXIS 76, at *6 (Dec. 3, 2019).

The Appeals Board wrote: "[A]n incapacity for work resulting from an occupational disease begins when such occupational disease, with the knowledge of the employee, or knowledge that he should have had in the exercise of reasonable caution, . . . has injuriously affected his capacity to work to a degree amounting to a compensable injury." *Id.* at *6 (quotations omitted).

Here, Mr. Myers was exposed to various toxins at work for Alcoa/Arconic. On April 25, 2024, Mr. Myers saw Dr. Salekin, who determined that he "most likely [had] restrictive lung disease from long standing exposure to aluminum dust, carbon dust, and asbestos." He also diagnosed impaired cognitive function, "most likely from aluminum dust exposure over a long period of time." Dr. Salekin further determined that "[c]oal tar/creosote exposure [was] likely contributing to [Mr. Myers's] difficulty in swallowing."

In his C-32, Dr. Salekin described Mr. Myers's injury as "injury to cerebral

cortex due to aluminum dust" and the mechanism of injury as "inhalation of aluminum dust at work while working at Alcoa[.]" Dr. Salekin concluded that Mr. Myers's employment, more likely than not, was primarily responsible for the injury or need for treatment.

Before April 25, 2024, no physician related his restrictive lung dysfunction or cognitive impairment to exposures at work.

Applying *Morgan*, Mr. Myers's "incapacity for work" resulting from his alleged pulmonary dysfunction and cognitive impairment began to run on April 25, 2024. Thus, his filing of his petition on May 23, 2024, was timely. The petition also provided timely notice. Although Mr. Myers voluntarily dismissed his case in July 2025, Alcoa's/Arconic's reverse petition filed nine days later revived his case under section 50-6-239(c)(3) and Tennessee Compilation Rules and Regulations 0800-02-21-.24 (2026).

Thus, the Court finds that Mr. Myers is likely to prevail at a compensation hearing that his claim is not barred by the statute of limitations.

*Medical Benefits*

Sections 50-6-301(a)(1)-(2) provide that the partial or total incapacity for work resulting from an occupational disease shall be treated as the happening of an injury by accident, and the employee shall be entitled to compensation, including the same hospital, medical and miscellaneous benefits as an employee who has a compensable injury by accident.

To recover medical benefits, Mr. Myers must prove that his occupational illnesses arose primarily out of and in the course and scope of his employment. He must show, by expert medical opinion, that his employment contributed more than 50% in causing the injury and need for treatment, considering all causes. *Id.* § 50-6-102(12)(A)-(D).

The record shows that Mr. Myers complained of shortness of breath, memory problems, and difficulty swallowing as early as 2004. In May 2015, Dr. Britton noted Mr. Myers had "quite a bit of wheezing" as well as morning cough and had been a heavy smoker since childhood. He diagnosed chronic obstructive pulmonary disease, obstructive sleep apnea, and coronary artery disease. Dr. Britton recommended a complete pulmonary function test and smoking cessation.

6

Based on his treatment, Dr. Britton agreed that Mr. Myers's pulmonary and cognitive injuries developed before April 25, 2023. He related Mr. Myers's pulmonary symptoms, more likely than not, to his history of heavy smoking. Dr. Britton related Mr. Myers's cognitive problems, more likely than not, to the heart attack and/or stroke. In his deposition, he admitted that he did not recall Mr. Myers having cognitive problems when he saw him from 2007 through 2024.

In January 2020, Dr. Holcomb informed Mr. Myers of the long-term pulmonary and vascular effects of continued tobacco use and recommended tobacco cessation and lung cancer screening due to his lengthy history of smoking.

In contrast, Dr. Salekin evaluated Mr. Myers on April 25, 2024, and noted that Mr. Myers reported shortness of breath for 18 to 20 years; trouble swallowing for six to seven months; and difficulties with memory, attention and concentration for ten to 12 years. Dr. Salekin determined that Mr. Myers "most likely [had] restrictive lung disease from long standing exposure to aluminum dust, carbon dust, and asbestos." He also diagnosed impaired cognitive function, "most likely from aluminum dust exposure over a long period of time." Dr. Salekin further concluded that "[c]oal tar/creosote exposure [was] likely contributing to [Mr. Myers's] difficulty in swallowing."

In his C-32, Dr. Salekin described Mr. Myers's condition as "injury to cerebral cortex due to aluminum dust" and the mechanism of injury as "inhalation of aluminum dust at work while working at Alcoa[.]" He concluded that Mr. Myers's employment, more likely than not, was primarily responsible for the injury or need for treatment.

When presented with competing expert opinions, the Court can consider the experts' qualifications, the circumstances of their examinations, the information available to them, and the importance attached to the information by other experts. *Orman v. Williams Sonoma, Inc.,* 803 S.W.2d 672, 676 (Tenn. 1991). Moreover, "[i]t seems reasonable that the physicians having greater contact with the [employee] would have the advantage and opportunity to provide a more in-depth opinion, if not a more accurate one." *Id.* at 677.

Here, Dr. Britton treated Mr. Myers from 2007 to 2024, while Dr. Salekin saw Mr. Myers once for the occupational illnesses at issue. Dr. Britton saw Mr. Myers for primary care and treatment, while Dr. Salekin saw him for an expert medical opinion for litigation. Dr. Britton is a primary-care physician, while Dr. Salekin is a neurologist and occupational-medicine specialist.

7

However, despite Mr. Myers's long history of heavy smoking, Dr. Salekin did not address the causal relationship of Mr. Myers's smoking history on his pulmonary dysfunction and cognitive impairment, focusing only on his occupational exposures. The same can be said for Dr. Britton, in that he causally related Mr. Myers's pulmonary dysfunction to his smoking without consideration of any occupational exposures.

In sum, the expert opinions cancel each other out. Thus, considering the record as a whole, the Court cannot find that Mr. Myers is likely to prevail at a compensation hearing that he is entitled to the requested benefits.

**IT IS, THEREFORE, ORDERED as follows:**

1. Mr. Myers's request for benefits is denied at this time.

2. The parties shall appear for a Status/Scheduling Hearing on **August 3, 2026**, at **1:30 p.m. Eastern Time**. The parties must call 855-543-5041 to participate.

**ENTERED April 29, 2026.**

_____
**JUDGE PAMELA B. JOHNSON**
**Court of Workers' Compensation Claims**

# APPENDIX

The technical record consists of all documents filed on the TNComp electronic filing system.[1]

*Exhibits:*
1. Employer's responses to admissions
2. Deposition of Adrianne Stoltenberg
3. Form C-32 of Dr. Salekin with attachments
4. Causation letter of Dr. Hina Kouser
5. Deposition of Dr. Britton Bishop
6. Medical Records with Table of Contents

# CERTIFICATE OF SERVICE

I certify that a copy of this order was sent as shown on April 29, 2026.

| Name | Email | Service sent to: |
|---|---|---|
| David H. Dunaway, Employee's Attorney | X | dhdunaway@aol.com |
| Tiffany S. Hranicky, Employer's Attorney | X | tbhranicky@mijs.com |

*Penny Shrum*
**PENNY SHRUM, COURT CLERK**
**wc.courtclerk@tn.gov**

---

[1] Mr. Hodge asked the Court to take judicial notice of "certain publicly available documents and adjudicative facts." They included findings of the Tennessee Supreme Court in a 2008 opinion arising from a wrongful death negligence claim and/or matters discussed in a January 2014 press release from the U.S. Securities and Exchange Commission. The motion was taken under advisement. The Court denies the motion, concluding the proposed facts are not relevant.



<u>Right to Appeal:</u>

If you disagree with the Court's Order, you may appeal to the Workers' Compensation Appeals Board. To do so, you must:

1. Complete the enclosed form entitled "Notice of Appeal" and file it with the Clerk of the Court of Workers' Compensation Claims before the expiration of the deadline.
   - ➢ If the order being appealed is "expedited" (also called "interlocutory"), or if the order does not dispose of the case in its entirety, the notice of appeal *must* be filed *within seven (7) business days* of the date the order was filed.
   - ➢ If the order being appealed is a "Compensation Order," or if it resolves all issues in the case, the notice of appeal *must* be filed *within thirty (30) calendar days* of the date the Compensation Order was filed.

   When filing the Notice of Appeal, you must serve a copy on the opposing party (or attorney, if represented).

2. You must pay, via check, money order, or credit card, a **$75.00 filing fee** *within ten calendar days* after filing the Notice of Appeal. Payments can be made in-person at any Bureau office or by U.S. mail, hand-delivery, or other delivery service. In the alternative, you may file an Affidavit of Indigency (form available on the Bureau's website or any Bureau office) seeking a waiver of the filing fee. You must file the fully-completed Affidavit of Indigency *within ten calendar days* of filing the Notice of Appeal. **Failure to timely pay the filing fee or file the Affidavit of Indigency will result in dismissal of your appeal.**

3. You are responsible for ensuring a complete record is presented on appeal. If no court reporter was present at the hearing, you may request from the Court Clerk the audio recording of the hearing for a $25.00 fee. If you choose to submit a transcript as part of your appeal, which the Appeals Board has emphasized is important for a meaningful review of the case, a licensed court reporter must prepare the transcript, and you must file it with the Court Clerk. The Court Clerk will prepare the record for submission to the Appeals Board, and you will receive notice once it has been submitted. For deadlines related to the filing of transcripts, statements of the evidence, and briefs on appeal, see the applicable rules on the Bureau's website at https://www.tn.gov/wcappealsboard. (Click the "Read Rules" button.)

4. After the Workers' Compensation Judge approves the record and the Court Clerk transmits it to the Appeals Board, a docketing notice will be sent to the parties.

   **If neither party timely files an appeal with the Appeals Board, the Court Order becomes enforceable. See Tenn. Code Ann. § 50-6-239(d)(3) (expedited/interlocutory orders) and Tenn. Code Ann. § 50-6-239(c)(7) (compensation orders).**

*For self-represented litigants: Help from an Ombudsman is available at 800-332-2667.*



## NOTICE OF APPEAL
Tennessee Bureau of Workers' Compensation
www.tn.gov/workforce/injuries-at-work/
wc.courtclerk@tn.gov | 1-800-332-2667

**Docket No.:** _____

**State File No.:** _____

**Date of Injury:** _____

_____

**Employee**

v.

_____

**Employer**

Notice is given that _____

*[List name(s) of all appealing party(ies). Use separate sheet if necessary.]*

appeals the following order(s) of the Tennessee Court of Workers' Compensation Claims to the Workers' Compensation Appeals Board (check one or more applicable boxes and include the date file-stamped on the first page of the order(s) being appealed):

☐ Expedited Hearing Order filed on _____  ☐ Motion Order filed on _____

☐ Compensation Order filed on_____  ☐ Other Order filed on_____

issued by Judge _____.

### Statement of the Issues on Appeal
Provide a short and plain statement of the issues on appeal or basis for relief on appeal:

_____

_____

_____

_____

### Parties
**Appellant(s) (Requesting Party):** _____  ☐ Employer ☐ Employee

Address: _____  Phone: _____

Email: _____

Attorney's Name: _____  BPR#: _____

Attorney's Email: _____  Phone: _____

Attorney's Address: _____

*\* Attach an additional sheet for each additional Appellant \**

Employee Name: _____ Docket No.: _____ Date of Inj.: _____

**Appellee(s)** (Opposing Party): _____ ☐ Employer ☐ Employee

Appellee's Address: _____ Phone: _____

Email: _____

Attorney's Name: _____ BPR#: _____

Attorney's Email: _____ Phone: _____

Attorney's Address: _____

*\* Attach an additional sheet for each additional Appellee \**

### CERTIFICATE OF SERVICE

I, _____, certify that I have forwarded a true and exact copy of this Notice of Appeal by First Class mail, postage prepaid, or in any manner as described in Tennessee Compilation Rules & Regulations, Chapter 0800-02-21, to all parties and/or their attorneys in this case on this the _____ day of _____, 20 _____.

_____
*[Signature of appellant or attorney for appellant]*



**Tennessee Bureau of Workers' Compensation**
**220 French Landing Drive, I-B**
**Nashville, TN 37243-1002**
**800-332-2667**

## AFFIDAVIT OF INDIGENCY

I, _____, having been duly sworn according to law, make oath that because of my poverty, I am unable to bear the costs of this appeal and request that the filing fee to appeal be waived. The following facts support my poverty.

1. Full Name: _____  2. Address: _____

3. Telephone Number: _____  4. Date of Birth: _____

5. Names and Ages of All Dependents:

_____ Relationship: _____

_____ Relationship: _____

_____ Relationship: _____

_____ Relationship: _____

6. I am employed by: _____

My employer's address is: _____

My employer's phone number is: _____

7. My present monthly household income, after federal income and social security taxes are deducted, is:

$ _____

8. I receive or expect to receive money from the following sources:

| | | | |
|---|---|---|---|
| AFDC | $ _____ per month | beginning _____ |
| SSI | $ _____ per month | beginning _____ |
| Retirement | $ _____ per month | beginning _____ |
| Disability | $ _____ per month | beginning _____ |
| Unemployment | $ _____ per month | beginning _____ |
| Worker's Comp. | $ _____ per month | beginning _____ |
| Other | $ _____ per month | beginning _____ |

9. My expenses are:

Rent/House Payment $ _____ per month     Medical/Dental   $ _____ per month

Groceries        $ _____ per month        Telephone      $ _____ per month

Electricity        $ _____ per month        School Supplies $ _____ per month

Water           $ _____ per month        Clothing        $ _____ per month

Gas            $ _____ per month        Child Care     $ _____ per month

Transportation $ _____ per month        Child Support   $ _____ per month

Car            $_____ per month

Other          $ _____ per month (describe: _____ )

10. Assets:

Automobile           $ _____        (FMV) _____

Checking/Savings Acct. $ _____

House                $ _____        (FMV) _____

Other                $ _____        Describe:_____

11. My debts are:

| Amount Owed | To Whom |
| --- | --- |
| _____ | _____ |
| _____ | _____ |
| _____ | _____ |
| _____ | _____ |

**I hereby declare under the penalty of perjury that the foregoing answers are true, correct, and complete and that I am financially unable to pay the costs of this appeal.**

_____
APPELLANT

Sworn and subscribed before me, a notary public, this

_____ day of _____, 20_____.

_____
NOTARY PUBLIC

My Commission Expires:_____